The next case on our docket is Angel Javier Mejia-Lobo v. Merrick B. Garland and that case is the next one. So if you're ready you may begin. Thank you. Good morning. May it please the court, my name is Stacy Toiber and I represent Mr. Mejia in this matter. There are two issues that I wanted to address today. The first being the issue of waiver, whether the board erred in finding that Mr. Mejia waived his challenge to the immigration judge's denial of his withholding claim and the second issue in the context of his asylum claim. Mr. Mejia came to the United States alone as a 16-year-old boy. He left his home in Honduras a week after finding the dismembered body of his cousin Juan. He, his cousin, and his family had all been threatened by the MS-13 gang. Mr. Mejia sought asylum, withholding, and protection under the Convention Against Torture. All were denied by the IJA. On appeal, the board found that Mr. Mejia waived the issue of withholding. This was an error and I want to clarify what we're asking the court to do here is to find that the board erred in finding waiver and remand the case back to the board for a decision by the agency in the first instance. We're not asking this court to review the substance of his withholding claim. I think there was some confusion there. This court has held that an issue is sufficiently raised when it puts the board on notice that the issue is before it and it is also held that the board is not free to ignore an issue that has been put before it. So if we look in this case at the notice of appeal and the brief that were submitted to the board, it's very clear that Mr. Mejia intended to challenge the denial of all three forms of relief. Did your client mention withholding of removal in his notice of appeal to the board? He did not, your honor, and he also did not mention asylum. So unless we're going to argue that, I mean the government did not argue that he waived the issue of asylum. If you look at the notice of appeal, what it focuses on is the issue of nexus. It challenges the immigration judge's failure to find nexus and nexus was the determining factor in both forms of relief, asylum and withholding, because the immigration judge found past persecution and found that Mr. Mejia's family was a part of a larger group of his family. And similarly in the brief, the argument is, the brief is organized and the argument is focused on the issue of nexus. And in both the notice and the brief, and I acknowledge counsel at the time clearly could have presented the issues more clearly, perhaps confused the standards, but the issue is clearly there. And so in the notice and in the brief, she cites cases from this court that address both standards. So in the notice of appeal, she cites Perusimova, which is, which covers the one central reason standard for asylum. She also cites Borja, which is the at standard. And then in the brief, again, she cites Madrigal, which is a one central reason case alongside Bogdasarian, which is an at least in part case. So clearly, again, even if it could have been better presented, the issue is there. And as this court stated in, I don't know how to pronounce it, Mamucian, when the issue is one of life and death and a petition, you know, a claim for protection from persecution, the board should not be trying to winnow out issues that are obviously before it. Let me ask you this question. The client, your client was denied relief by the board with respect to asylum, correct? Correct. But the board does not reach the question of withholding? Correct. And you're saying that we should send back to the board to reach withholding because the nexus standard with respect to withholding is more generous than with respect to asylum? That's the argument? Well, the argument is that the board erred in finding that he waived the issue. No, I understand. But yes, but if the issue is not waived, the standard of nexus is different for withholding. Correct. And therefore, you want it to go back so that the board applies the more generous standard for withholding? Correct. Correct. For withholding, it simply has to be a reason. Right. As opposed to a central reason for asylum. Right. So you're saying that that issue wasn't decided and should have been decided because the question was appropriately teed up to the board. That's the argument? Correct. Okay, got it. Second issue I wanted to address is the issue of nexus. And this is in the context of asylum. Before you get to that, so can you tell me what evidence exists in the record reflecting that Mr. Lobos, Mejia Lobos' opposition to the gang was politically motivated? And I guess what I'm trying to get at is your argument that general anti-gang opposition is sufficient to constitute a political opinion when the gang is really operating as a quasi-government? Well, we're making two arguments. The first is that Mr. Mejia established eligibility for asylum based on his social group of his family. The second issue is the one of political opinion. And I think where the evidence shows, as it does here, that you have a gang that has infiltrated society to such an extent that it is operating like a local government, that to express opposition to that gang is akin to expressing a political opinion. But any opposition? I mean, what's the what's his, what's your best evidence for the opposition? Sure. There is an example. At one point, Mr. Mejia says, his counsel asks him why he didn't want to join the gang or why he refused their requests. And he says, I told them that I don't agree with them. I disagree with the violence and the stealing from people. And counsel says, did you say that to the gang? He says, yes. And what happened? They grabbed him from behind and started beating him. So at what point does the dominance of the gang, of the society, turn the gang into the de facto government? So that opposition to the gang, it turns into political opposition because it's opposition to the de facto government. At what point does the gang have to dominate and control the society? I think when it becomes, the gang is able to effectively control the movement of people within the town. It has, you know, the extent of corruption indicated by the evidence that the gangs effectively control political parties and candidates. And what do we know in this case about the degree of domination by the gang of what would be the ordinary instruments of government? What we have is Mr. Mejia's testimony that it was useless to report things to the government because, I'm sorry, to the police, to the authorities, because they were hand-in-hand with the gangs or they would do nothing. And that testimony is supported by the country conditions evidence. And do the gangs collect the equivalent of taxes? They do, yes. That is the evidence. And do the gangs provide protection for those whom they wish to protect? Absolutely. Do the gangs provide service, governmental services, schools, other services? No, beyond, well, not that I'm aware of. I think beyond the issue of collecting money and providing protection, Mr. Mejia did testify that he was badly beaten at also in cahoots with the gang. Yeah, I'm having trouble equating the gang with government for purposes such that opposition of the gang will be tantamount to political opposition of government when all the gang does is terrible things and doesn't do any of the good things that a government might also do. I mean, at what point does it become a de facto government instead of just a terrorist organization? Well, I think I'm not sure that maybe de facto government isn't quite the right term. I know that the case, this is an unpublished case, but it is Yusuf V. Jefferson is in the record. This court found that where the respondent, the respondent was, there was an attempt to recruit the respondent into a militia by the local chief. And the respondent said, no, I oppose your violent ways. And this court found that expressing opposition to these tactics, to these methods, to violence, constituted a political opinion in that context. And here we also have that the immigration judge found that this is according to the immigration judge, Mr. Mejia opposes the activities in which the gang engages and has informed the gang that he does not approve of the crimes they commit. And so in the sociopolitical context of Honduras and of his village, that is equivalent to a political opinion. Okay, I get the argument. Thank you. Thank you. I'll reserve my time unless there's more questions. You have no time, but I'll give you a minute. Oh, thank you. Counsel. May it please the court, Your Honor. Joanna Watson on behalf of the attorney, the United States Attorney General. It's a pleasure to be before judges Bennett and Fletcher again for the second time this week. In response to the waiver argument, that it was not waived. While he did mention nexus and the notice to appeal, the brief that was submitted on appeal, which provided detailed reasons for what he was challenging only referenced withholding of removal and the first paragraph and at the end. And it's even evidenced by the summary of the fact section. When he was summarizing the immigration judge's decision, he talks about And as this court is aware, withholding, while it requires a higher burden of showing more likely than not that he would be persecuted, it has a lower standard for the nexus. And the immigration judge referenced that in his decision. He referenced that in the beginning when he's talking about the burdens of proof for the different forms of relief. And he is well aware that there is a difference and it was not it was not raised in that brief on appeal. And this court has said, you know, the board has to have an opportunity to see the issues that are presented and to bypass them. And that's exactly what they did here. They said that it was not. And I understand what you're saying, but I'm just curious, how would you respond to the argument that by arguing one central reason standard that Mr. Mejia Lobo was necessarily arguing a reason standard? Honestly, Barajas doesn't even come into play when there's no protected reason involved here. And that's what happened. They said there is no reason at all that's protected for the harm that he endured and he fears. The immigration judge has a footnote in the withholding claim where he discusses. Or he discusses how this wasn't a reason at all. So that's in this context, neither family or political opinion. I mean, this is a regular But the IJ might have thought there was no family connected reason, but the BIA didn't speak to that question with respect to the standard under withholding, correct? I mean, the fact that the IJ did that doesn't tell us what the BIA might have held had it reached the question. No, that's true. But the board, he didn't present it in the brief. What do you mean? No argument whatsoever to withholding. How do you respond to the argument of your friend on the other side who said, well, yeah, he didn't mention withholding, but he didn't mention asylum either. And the board reached asylum. I'm getting to that. He cites the regs for asylum in that in his brief on appeal. He doesn't cite one single reg or statute in regard to withholding removal. And again, like I said, when he was summarizing the facts, the immigration judge's decision, he skips. It ends with asylum. And then goes on to a summary of the denial convention against torture relief. So he even skips it over there. And there I mean, there's a there's a big distinction. She makes this whole argument about mixed motives and the wrong standard being applied here and everything. And and that can go to withholding. I mean, the court has remanded cases and withholding that weren't addressed under a reason versus one central reason. But here they didn't they didn't make any of those arguments. And that's why the board has that footnote saying that it was not challenged and it was being considered waived. Getting on to political opinion and the record doesn't compel a different result here. He was arguing in the brief about the FMLN in another country, which were a recognized political party. Here, the gangs are not recognized as a political party. They have no positive impact in that in the town. And, you know, saying I don't want to join you. I mean, this court has said that that's not that does not present a political opinion. Well, you know, getting getting to Judge Fletcher's or a variant of Judge Fletcher's question to your friend. There are lots of views that there are lots of governments that do very little good for for their people. Where do you draw the line when a gang is running a particular territory as to whether they count as a de facto government? What is it that they would have to control or not control before they would pass whatever line it is to turn them into a de facto government for these kinds of analyses? I think they would have to be recognized as a political entity. Recognized in what way? As that they they were a political. Not just involved in politics, but they were they ran for office and they were part of the whole government. And here we're talking about gangs and getting to that. And he didn't report a lot of these these things. But then he talked about his uncle, who was part of a quasi military police undercover and actually came into the town and took one of the gang members that had shot at his house. They caught him. And then he also talks about how his when his mother was threatened. They believe the mother was threatened because she witnessed a crime and the. And the gang members were upset that there was more of a police presence in the neighborhood. I mean, I think it's a different question as to whether Petitioner has met any possible standard here, which I can understand why that would be your focus. But to get there, or perhaps in in a slightly different case, I don't think it can be that it has to be a recognized political party if what we're looking at is a de facto government because of the control a criminal enterprise exercises in the territory in which they operate. Well, I don't think it was complete control because there is police presence in this neighborhood. He talked about it and he talked about the uncle who was working to fight off gangs and everything. So I wouldn't say there was a de facto political entity in this neighborhood. Are you saying are you saying that it's never possible for a gang to be recognized as a political entity? Is it just a de facto government? I'm saying in this instance, they're not and I haven't seen a case where they are. And like I've said before, there's case law that shows that when you don't want to join a gang and you say you don't agree with them, you know, that's not a political opinion. I'm coming after they, you know, they wanted him to join the gang and he was unfortunately beaten up when he refused to. If there are no more questions on family or cat on the government will rest on the breeze. All right. Thank you. Ms. Tauber, I'll give you one minute. Thank you. Just really quick then, I would point out that the immigration judge in his decision kind of contradicts himself because this is on page 175 of the record. The immigration judge says that the family unit, he recognizes that Mr. Mejia did suffer harm as a result of his family group. But he says this reason is incidental or tangential to the central reason for the harm. So he does recognize that. And as far as the immigration judge's withholding analysis, he confuses the nexus issue with the standard, with the more likely than not standard for persecution. So it's not a well-reasoned decision on that regard either. And yes, this court, the board itself often confuses the issue of the requirement for nexus for both asylum and withholding cases. That's not uncommon. It shouldn't deny, it shouldn't result in petitioner being unable to raise the claim in this case. And a final point, in Yusuf, the entity was a clan, which I would say is akin to a gang. I think it's a similar circumstance. Thank you. Thank you very much. Ms. Tauber and Ms. Watson, I appreciate your oral argument presentations. The case of Angel Javier Mejia Lobo v. Merrick Garland is submitted.
judges: MURGUIA, FLETCHER, BENNETT